Farmer v. Farmer.

JOSIAH FARMER, Guardian, *et al.* *v.* E. J. FARMER *et al.*

INSANITY. *Provision for children of parent of unsound mind.* When the mental unsoundness of a parent becomes of long standing or confirmed, a settlement or provision for one of his children may be made out of his estate under the Code, sec. 3708, *et seq.*, although such child may have come of age and married before the unsoundness of mind occurred or became confirmed.

FROM ROBERTSON.

Appeal from the Chancery Court at Springfield. GEO. E. SEAY, Ch.

J. W. JUDD and L. COBB for complainants.

J. E. GARNER & SON for defendants.

COOPER, J., delivered the opinion of the court.

Isaac Farmer had three children by his first wife, and one child by a second wife still living. He advanced to each of his two oldest children by the first wife about $400 in personalty, and a tract of land of one hundred acres. The third child by that wife was a daughter, named Priscilla, to whom he made advancements in personalty of the value of about $137. Priscilla married a man named Winn, who went into the Confederate army, was taken prisoner, and died about 1863 [in prison at the North. Isaac Farmer, when Winn went into the army, took his daughter

with a young child, a girl, to his house and provided
for the daughter and child as 'members of his family
until 1879, when he became insane, and was put in
the lunatic asylum, where he still remains, being sixty-
seven years of age, in feeble health, and incurably
demented. As early as 1872 or 1873, Isaac Farmer
declared his intention to give his daughter, Priscilla,
one hundred acres of land to be taken from the north-
east corner and east side of his home place, and ac-
tually built a fence on the dividing line which is still
standing. He spoke of the land as his daughter's,
and made some preparations to build her a house upon
it. The daughter has no property, and not being
able to live with her step-mother it seems, has been,
since 1879, dependent upon friends and relatives for
the support of herself and child. The complainant,
Josiah Farmer, a brother of Isaac, was appointed and
qualified as his guardian. He has collected the debts
due his ward, and sold most of the personalty not
exempt from execution, and has a fund of about $5,000
in his hands. The sum of $300 is required to pay
the expenses of his brother in the asylum, and to clothe
him. The home place of the lunatic consists of three
hundred and twenty acres, the homestead being occupied
by the wife and her son by the husband, now about
fifteen years of age. Under these circumstances, on
April 14, 1881, Josiah Farmer, the guardian, and
Priscilla Winn, the daughter, joined in filing the present
bill against the wife and the other children of Isaac
Farmer, stating the foregoing facts, and asking that a
settlement or provision be made for the daughter from.

Farmer *v.* Farmer.

the estate of her father. The bill was taken for confessed against the two older children, and was answered by the wife, and by her son by a guardian *ad litem*. Testimony was taken, substantially establishing the facts alleged in the bill. It was further averred and proved that the lunatic had made no will. The proof is also clear that one hundred acres of the land may be laid off to the daughter, without interfering with the rights of the wife to homestead and dower, or with the share of her child in the estate, and without interfering with the proper maintenance and support of the lunatic. The chancellor granted the relief sought, and the wife alone appealed.

In the chapter of the Code regulating the proceedings in relation to persons of unsound mind, one article is devoted to the disposition of the estates of such persons, in certain contingencies, for the benefit of their families. The first section of this article, being section 3708 of the Code, is thus worded: "The guardian appointed under this chapter is authorized, upon the coming of age or marriage of any child of the lunatic, in case of long standing or confirmed mental unsoundness, to make such settlement or provision for such child as the situation of the estate, the age and condition of the lunatic and his wife, if any, and the number of his children, and other circumstances, may render reasonable and just; and the guardian and his sureties are liable on his bond 'for any intentional fraudulent abuses by them committed." Then follows sec. 3709: "To avoid which risk, the guardian himself, or the child coming of age or marrying, may file a bill i

the chancery court of the county in which either the
guardian or the lunatic resides, making all necessary
parties, and proceed as in other chancery cases." Sec-
tion 3710 is: "The court may, in such cases, decree
the partition and division of a reasonable portion of
the real and personal estate of the person laboring
under confirmed mental unsoundness, among his children
or descendants, as in case of death and intestacy, charg-
ing such portion as an advancement." It is provided
by the following sections that before making the decree
the court shall be fully satisfied there is no valid will,
and that it is manifestly for the interest of the
lunatic and his family that the division should be made.
It is further provided that ample means shall be re-
tained for the support, maintenance, care and comfort
of the person of unsound mind, and his wife, and to
provide the wife's year's support, dower and distribu-
tive share, in case she survive him. There is a fur-
ther provision for a refunding bond to be taken from
the person to whom a division or distribution of prop-
erty is made, so as to keep the property allotted under
the control of the court. Section 3714 is: "If any
party to whom such partition or distribution has been
made is a minor, the refunding bond shall be given
by his guardian."

The objection to the relief sought in this case,
made first by demurrer to the bill, and afterwards,
when the demurrer was overruled, by answer, is that
the authority given to the court to make advancements
to the children of a living person is of an extraordi-
nary character, and must be restricted to the precise

Farmer v. Farmer.

case prescribed by the statute, which is "upon the
coming of age or marriage of any child of the lunatic";·
and that neither contingency has happened since the
appointment of the guardian or lunacy of the parent.
The objection, and the argument in support of it, turn
upon the letter of the law. And it must be admitted
that if the letter is ever to be rigidly adhered to it
should be where a living person's estate is to be di-
vided, even among his children.

It will be noticed, however, that the partition and
division provided for by the statute are not limited to
the child coming of age or marrying. For the lan-
guage of section 3710 is that the partition and division
of a reasonable portion of the real and personal estate
of the lunatic may be made "among his children or
descendants," and section 3714 provides for the case of
an allotment to a minor. The coming of age or
marrying of a child is the event which authorizes the
court to exercise the power conferred, for the obvious
reason that, in either event, the necessity of a separate
homestead arises. The important fact is that one of
the children is of age or married, whether he comes
of age before or after the lunacy has become incurable,
or, in the language of the statute "of long standing
or confirmed." It is clearly contemplated that in
order to call the jurisdiction conferred upon the court
into effect there must be an unsoundness of mind "of
long standing or confirmed," and a child of age or
married, and therefore having a right to have an ad-
vancement which the parent himself, if of sound mind,
would probably have given. It was manifestly not

intended that the exercise of the jurisdiction should depend upon an accidental fact, which might rarely occur in cases of lunacy of long standing, namely, that a child should, after the lunacy had been of long standing, come of age or marry. The children might all be of age or married before that event. The meaning was, when the lunacy became confirmed, to allow advancement, such as the parent himself would have made, to the children then of age or married.

The old statutes brought forward into the article of the Code under consideration, are the acts of 1824, ch. 2, and the act of 1852, ch. 57. The language of the first of these acts is that when the guardian has been appointed, and shall have given bond and security as required by law, " and any child or children of such idiot or lunatic shall have arrived at lawful age, or shall have married," then the guardian may make a reasonable settlement or provision for such child. So, in the section which authorizes the child to file a bill, the language is: " Where any child or children of any idiot or lunatic shall have heretofore, or may hereafter come to lawful age, or marry," then etc. The act of 1852 is still broader in its terms, for it provides that the chancery court may, in all cases, where an idiot or lunatic is confirmed in insanity and without hope of recovery, and has one or more children or the descendants of such, ;"upon the prayer of guardian or child, or descendants of a deceased child," decree, etc. The compilers of the Code, in condensing these statutes, have merely used equivocal language, without changing these provisions. This court

has invariably held that in doubtful cases it will be presumed that it was not intended to change, but only to revise or compile the old statutes: *Bates* v. *Sullivan*, 3 Head, 633; *Tennessee Hospital* v. *Fuqua*, 1 Lea, 611.

Affirm the decree. The costs will be paid by the estate.